## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARLOS FLORES,

                Plaintiff,

   -against-

FORSTER & GARBUS LLP
and LVNV FUNDING, LLC,

                Defendants.

_____/

Docket No.: 19cv4494

**CLASS ACTION COMPLAINT**
Request for Jury Trial

Plaintiff CARLOS FLORES (hereafter, "Plaintiff"), a New York resident, brings this class action complaint by and through his attorney, The Tariq Law Firm P.L.L.C., against Defendants FORSTER & GARBUS LLP and LVNV FUNDING, LLC, (hereinafter "Defendants"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's own personal knowledge.

## INTRODUCTION/ PRELIMINARY STATEMENT

1.      Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

2.     Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." § 1692(e). Congress then determined that the existing consumer protection laws were inadequate. § 1692(b). The FDCPA creates a private cause of action for consumers to seek damages against debt collectors who fail to comply with its requirements. § 1692k.

3.     The Second Circuit has held that when determining whether a collection letter violates the FDCPA, courts must adopt a standard based on the least sophisticated consumer. *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

4.     The purpose of using the least sophisticated consumer standard is to protect "all consumers, even those who are naïve and trusting." *Id*. at 1320. The standard also serves the purpose of protecting "debt collectors from idiosyncratic interpretations of debt collection letters." *Id*. Here, under the least sophisticated consumer standard, Defendants' actions qualifying as both unfair and deceptive, and in violation of the FDCPA.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this class action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201. If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

7.     Plaintiff brings this action on behalf of a class of New York consumers seeking redress for Defendants' actions of using unfair and unconscionable means of collecting debt.

8.      Defendants' actions violated § 1692 et seq. of Title 15 of the United States Code, the Fair Debt Collections Practices Act ("FDCPA"), which prohibits debt collectors from engaging in abusive and deceptive practices in the effort to collect on debt.

9.      Plaintiff is seeking damages, declaratory, and injunctive relief.

## PARTIES

10.     Plaintiff is a natural person and a resident of the State of New York and is a "Consumer" as defined by 15 U.S.C. §1692 (a)(3). A "consumer" is defined under the FDCPA as "any natural person obligated or allegedly obligated to pay any debt." *Id*.

11.     Defendant Forster & Garbus LLP, is a law firm engaged in the business of collecting debts with a principal place of business located in Commack, New York.

12.     Defendant LVNV Funding, LLC, is a collection agency engaged in the business of collecting debts with a principal place of business located in Columbia, South Carolina.

13.     Upon information and belief, Defendants are companies that use the mail, telephone, and facsimile and regularly engage in business the principal purpose of which is to attempt to collect debts alleged to be due to another entity.

14.     Defendants are regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

15.     Defendants are both "debt collectors" as defined under the FDCPA under 15 U.S.C. §1692a(6). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect" debts due or allegedly due to another. *Id*.

## CLASS ALLEGATIONS

16.     Plaintiff brings claim, pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 23, individually and on behalf of the following consumer class (the "Class"):

All persons similarly situated in the State of New York from whom Defendants attempted to collect a consumer debt using the same unlawful form letter herein, from one year before the date of this Complaint to the present.

17.     The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

A.  Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from Defendants that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice that is sent to hundreds of persons (*See* **Exhibit A** except that the undersigned attorney has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers in an effort to protect Plaintiff's privacy);

B.  There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

i.  Whether Defendants violated various provisions of the FDCPA;

ii.  Whether Plaintiff and the Class have been injured by Defendant's conduct;

iii.  Whether Plaintiff and the Class have sustained damages and are entitled to restitution because of Defendants' wrongdoing and if so, how to properly

measure an appropriate statutory formula to be applied in determining such

damages and restitution; and

iv.   Whether Plaintiff and the Class are entitled to declaratory and/or injunctive

relief.

C.   Plaintiff's claims are typical of the Class, which all arise from the same operative facts and

are based on the same legal theories.

D.   Plaintiff has no interest adverse or antagonistic to the interest of the other members of the

Class.

E.   Plaintiff will fairly and adequately protect the interest of the Class and has retained

experienced and competent attorneys to represent the Class.

F.   A Class Action is superior to other methods for the fair and efficient adjudication of the

claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be

encountered in the management of this class action.

G.   A Class Action will permit large numbers of similarly situated persons to prosecute their

common claims in a single forum simultaneously and without the duplication of effort and

expense that numerous individual actions would engender. Class treatment will also permit

the adjudication of relatively small claims by many Class members who could not

otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class

Action, class members will continue to suffer losses of statutory protected rights as well as

monetary damages.

H.   Defendants have acted on grounds generally applicable to the entire Class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the

Class as a whole.

### ALLEGATIONS OF FACT PARTICULAR TO CARLOS FLORES

18.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were fully set forth at length herein.

19.     Defendants collect and attempt to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone and internet.

20.     Upon information and belief, within the last year Defendant Forster & Garbus LLP commenced efforts to collect debt allegedly owed by Plaintiff to Defendant LVNV funding.

21.     Plaintiff received a letter dated April 18, 2019 from Forster & Garbus LLP (the "Letter"). *See* **Exhibit A**. Forster & Garbus identifies itself in its return address as "A New York law firm." *Id*. The Letter appears to be a standard form letter that could potentially have been sent to hundreds or thousands of consumers. *Id*.

22.     The front side of the Letter states: "A judgement has been duly entered in court against you." *Id*. This is the first line of the Letter. *Id*.

23.     The Letter further informs Plaintiff that "unless satisfactory arrangements are made with this office to pay the full judgement balance, judgment enforcement proceedings may be instituted… to secure payment thereof." *Id*.

24.     Plaintiff is instructed that "all payments must be made payable to Forster & Garbus, as attorneys, and sent to this office." *Id*.

25.     The Letter states that a balance of $1,138.75 is due to Defendant LVNV Funding LLC, with the original creditor listed as Credit One Bank, N.A. *Id*. A representative is listed as "Mr. Cohen," and his office hours are included. *Id*.

26.    Defendants have also included a statement on the front side of the letter reading: "We are debt collectors and any information we obtain will be used in attempting to collect this debt." *Id*.

27.    The back side of the Letter includes information regarding the supposed judgement that has been entered against Plaintiff. *Id*. Under the heading "Notice to Judgement Debtor or Obligor," it states: "Money or property belonging to you may have been taken or held in order to satisfy a judgement or order which has been entered against you." *Id.*

28.    The notice continues to state a number of exceptions to money or property that can be taken to satisfy judgements such as social security benefits, public assistance, alimony or child support, etc. *Id*. It instructs Plaintiff to "act promptly" if he believes that any property taken is exempt from being used to satisfy the judgement. *Id*. It states that he can consult an attorney to get any money back that may have been improperly taken pursuant to the alleged judgment against him. *Id*.

29.    The back side of the letter again includes a statement that Defendants are debt collectors and any information obtained will be used in attempting to collect debt. *Id.*

30.    While the Letter claims that a judgment has been entered against Plaintiff regarding debt that he allegedly owes to LVNV Funding, Plaintiff was never served with process for any suit relating to such debt. Further, no evidence of such judgement entered against him was included in communications made by Defendants.

31.    There is currently no outstanding judgement against Plaintiff, and no record that legal action has ever been taken against him that would give rise to such a judgement.

32.    Defendants' actions have clearly violated the FDCPA in several ways. Firstly, Defendants have intentionally misrepresented the legal status of the debt allegedly owed by Plaintiff. Defendants have also failed to include a statement in their Letter to Plaintiff which informs him

that, while the communications made to him were by a law firm, that law firm was acting solely in its capacity as a debt collector.

33.      The Letter received by Plaintiff does not include language informing him that no attorney was meaningfully involved in the review of the communication. Without such a disclaimer, the consumer is meant to understand that meaningful attorney review had taken place.

34.      While a representative is listed on the Letter as Mr. Cohen, it is certain that no meaningful attorney review had occurred before the Letter was sent, as there has not been a judgement entered against Plaintiff, as the Letter alleges.

35.      The back side of the letter informs Plaintiff that money or property belonging to him may have already been taken to satisfy the judgement. *Id*. This language is sure to confuse and deeply concern a consumer, especially the least sophisticated consumer.

36.      All of the foregoing aspects of the Letter sent by Defendant Forster & Garbus on behalf of LVNV funding constitute unfair and deceptive means of attempting to collect a debt.

37.      Plaintiff is entitled to relief pursuant to a number of FDCPA provisions.

### First Count
### False Representation of the Legal Status of a Debt
### 15 U.S.C. 1692e(2)

38.      Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

39.      Under the FDCPA it is unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. This includes the false representation of "the character, amount, or legal status of any debt." § 1692e(2)(A).

40.    It has been well established by courts, including the Second Circuit, that the FDCPA imposes strict liability on debt collectors who behave wrongfully. *Lee v. Kucker & Bruh, LLP* 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013). Further, "to recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector." *Russell*, 74 F.3d at 33 (2d Cir. 1996).

41.    As a threshold matter when a court is evaluating a claim for misrepresentation of the legal status of a debt, it must first determine whether such action could not legally be taken or is not intended to be taken. *Gervais v. Riddle & Associates, P.C.* 479 F. Supp. 2d 270, 273(D. Conn. 2007). In order to make that determination, the court must evaluate the nature of the Plaintiff's alleged debt. *Id.*

42.    Here, Defendant Forster & Garbus' actions in seeking to collect debt on behalf of Defendant LVNV Funding clearly misrepresented the legal status of the debt allegedly owed by Plaintiff. Defendants' claimed that a judgement had been entered against Plaintiff regarding the debt. Further, they stated that they would initiate enforcement proceedings if Plaintiff failed to pay the debt he allegedly owed. This was a clear misrepresentation, as no judgement exists, and no enforcement proceeding could be initiated against Plaintiff.

43.    Additionally, the source of the communication from a debt collector can contribute to representations made regarding the legal status of a debt. *Id.* at 274. For example, in *Jenkins*, the court held that "in cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney." *Jenkins v. Union Corp.*, 999 F. Supp. 1120 (N.D. Ill. 1998).

44.    Here, there is no ambiguity in the language used in the Letter sent by Defendant Forster & Garbus LLP regarding its representation that it has the legal authority to take action regarding

Plaintiff's alleged debt. However, even if there were ambiguity in Defendant's statements, the mere fact that the letter clearly is a communication from a law firm may influence the least sophisticated consumer to understand that legal action can and might be taken against him.

45.    This is especially the case given the fact that Defendant fails in its letter to clearly differentiate between its duel roles as both lawyers and debt collectors.

**<u>Second Count</u>**
**False Representation of Meaningful Attorney Involvement**
**15 U.S.C. 1692e(3)**

46.    Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

47.    Under 15 U.S.C § 1692e it is unlawful to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition includes "the representation or implication that any individual is an attorney or that any communication is from an attorney." § 1692e(3).

48.    Because Defendant Forster & Garbus LLP acts as a law firm as well as a debt collector, it has a responsibility to consumers to clearly indicate that they it is acting solely as a debt collector, and not as a law firm, when sending dunning letters. *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009). Defendant failed to fulfill this responsibility. In *Gonzalez*, the court held that "a lawyer acting as a debt collector must notify the consumer through a clear and prominent disclaimer, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out [a] letter." *Id*.

49.    While the Letter sent to Plaintiff informs him that it is from a debt collector, it does not provide a clear disclaimer that Defendant was not acting as a law firm when sending it.

10

Additionally, the return address of the Letter indicates that Defendant Forster & Garbus LLP is "a New York law firm," thus clearly a communication from an attorney's office. *See* **Exhibit A**.

50.    Defendants have also misrepresented the degree of attorney review that had taken place prior to Plaintiff receiving the Letter.  The Letter itself does not include a disclaimer that no attorney had personally reviewed Plaintiff's individual case. This "safe-harbor" language is necessary if attorneys send out debt collection letters without investigating the merits of a particular case. *Greco*, 412 F.3d at 364 (2d Cir. 2005).

51.    While failing to include such necessary disclaimer language, the Letter does identify a representative as Mr. Cohen. *See* **Exhibit A**. It does not state that Mr. Cohen is an attorney or what actions had been taken by him prior to the Letter being mailed. *Id*.

52.     By including this statement referring to a representative in its Letter, Defendant appears to be claiming to have partaken in meaningful attorney review of Plaintiff's information. However, there is a genuine question of fact regarding whether any level of attorney review had been carried out whatsoever before the letter at issue was sent. This is especially true given the fact that the letter states that a judgement had been entered against Plaintiff when no such judgement exists.

53.    Defendant has not made any claims or presented any evidence to suggest that it acted in its capacity as a law firm when reviewing Plaintiff's information.

54.    The letter sent by Defendant is very clearly a form letter that could plausibly have been sent to hundreds, if not thousands, of consumers. While the facts of this case are not identical to those in *Clomon*, where an attorney allowed his name and facsimile of his signature to appear on computer generated letters, the holding there is still relevant. *Clomon,* 988 F.2d 1314 (2d Cir. 1993). There, the Second Circuit held that the attorney had violated § 1692e(3) by allowing

collection letters with his name to be sent while he "played virtually no day-to-day role in the debt collection process." *Id.* at 1320.

55.     Because of the minimal involvement the attorney took in collecting debt, the court held in *Clomon* that "the collection letters were not 'from' [him] in any meaningful sense of the word." *Id.* Similarly, here, the collection letter sent by Defendant is not 'from' them in their capacity as attorneys, but only as debt collectors.

56.     Again, Defendant had a responsibility to clearly differentiate between these two roles and neglected to do so. *Gonzalez*, 577 F.3d at 604 (5th Cir. 2009).

57.     The Second Circuit in *Clomon* went on to state that "no mass mailing technique is permissible- regardless of how effective it may be- if that technique constitutes a false, deceptive, or misleading communication." *Clomon*, 988 F.2d at 1321 (2d Cir. 1993).

58.     Here, Defendant sent a form letter Plaintiff for the purpose of collecting a debt, and very plausibly failed to conduct any attorney review whatsoever. This is especially true given the fact that, as the Second Circuit stated, "there will be few, if any, cases in which a mass-produced collection letter…will comply with the restrictions imposed by § 1692e. *Id.*

59.     Similarly, the Seventh Circuit has also held that "a rational jury might [find], based on the volume of mail sent by an attorney's firm, that it was unlikely that attorney had actually reviewed consumers files before authorizing letters to be sent to them." *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001).

60.     Although the Second Circuit has declined to define "meaningful attorney involvement" as it applies to attorneys sending debt collection letters, the reasoning that was involved in the decision not to create a universally applicable definition is relevant here. *See Miller v. Wolpoff*, 321 F.3d 292 (2d Cir. 2003).

61.     In *Miller*, a standard for "meaningful attorney involvement" is not created because "there

may be circumstances where, following discovery, it becomes clear that the attorney's familiarity

with the client's contracts and practices would negate the need to review some if not all the

documents [the plaintiff sought] to acquire." *Id*. at 304. Here, there is no indication that any such

familiarity of Plaintiff's information had been established by Defendant before the Letter at issue

was sent.

62.     In *Miller*, the attorney defendants submitted affidavits and other evidence showing that

they had conducted some review into consumers' information before sending dunning letters. *Id.*

at 301. *See also Nielson v. Dickerson*, 307 F.3d 623 (7th Cir. 2002). The Second Circuit held that

although the defendants claimed that their affidavits made clear that they satisfied the FDCPA's

requirement of reasonable attorney involvement, the court reasoned that they "lacked sufficient

detail to permit the district court...to determine that their review was sufficient as a matter of

law." *Miller*, 321 F.3d at 305 (7th Cir. 2003).

63.     Here, no such evidence has been provided by Defendant to suggest that any level of

attorney review had taken place whatsoever before sending the dunning Letter to Plaintiff. In

fact, had any attorney review had occurred at all, the letter would never have been sent because it

makes false legal claims regarding Plaintiff's alleged debt. It states that a judgement had been

obtained against Plaintiff when no suit had ever been initiated, nor any judgement entered,

against him.

64.     Further, the Second Circuit in *Miller* held that granting a motion to dismiss would be

premature before the plaintiff was able to conduct discovery regarding how much attorney

review took place. *Id.* at 307. The court stated that "if discovery...were to reveal that [the

attorney defendants] handled [a] high volume of accounts, received only limited information

described in the attorney affidavits, [and] reviewed the collection files with such speed… a reasonable jury could conclude that [the attorneys] lacked sufficient professional involvement with plaintiff's file" *Id.* at 306.

65.    Although a standard has not been set by the Second Circuit regarding how much attorney involvement is required to warrant sending a collection letter that complies with § 1692e, other courts have held that even minimal involvement is not sufficient.

66.    In *Nielson*, the Seventh Circuit held that even though a law firm was actively involved in investigating consumer information, they had still violated the FDCPA. *Nielson*, 307 F.3d at 636. There, the law firm ran computer checks of consumer information, and investigated whether the consumers had declared bankruptcy before sending a collection letter. *Id*. However, the court held that "beyond conducting facial checks of the data [the defendant] was provided, [he] relied on creditor's judgement concerning the validity and delinquency of the debt." *Id.* at 627. The court held that the defendant's "involvement still fell markedly short" of FDCPA requirements under § 1692e. *Id*. at 638.

67.    Similarly, based on the lack of evidence provided by Defendant and the fact that the Letter received by Plaintiff is a form letter, it appears as though Defendant has not engaged in any attorney review of Plaintiff's information whatsoever.

68.    Even if a jury were to find that Defendant Forster & Garbus LLP conducted a minimal amount of attorney review before sending the Letter to Plaintiff, they could not find that such review was meaningful. If it were, as stated above, the letter would never have been sent at all, given the false legal claims it makes.

69.    Although attorneys are able to send collection letters without conducting meaningful review of a consumer's information, they must clearly indicate that no such review has taken

place. To reiterate, the Second Circuit has held that "an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process so long as that letter includes disclaimers" that he is not acting as an attorney at the time of sending the letter. *Greco*, 412 F.3d at 364 (2d Cir. 2005).

70.     Not only did Defendant fail to include such a disclaimer in its letter but failed to provide evidence that any attorney review had occurred, and at the same time directly threatened to take legal action against Plaintiff based on false information.

## Third Count
### Threat to Take Action that Cannot Legally be Taken
### 15 U.S.C. §1692 e(5)

71.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

72.     Under the FDCPA it is unlawful to make a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Here, the Letter sent by Defendant to Plaintiff notifies him that "unless satisfactory arrangements are made with this office to pay the full judgement balance, judgement enforcement proceedings may be instituted… to secure payment thereof." *See* **Exhibit A**. Although this language is included, a search of court records reveals that Plaintiff has never been sued regarding this debt, and no judgement has ever been entered against him.

73.     Although the Defendant threatens to take further legal action to begin proceedings to enforce an alleged judgement against Plaintiff, it would be legally impossible for Defendant to take such action, as no judgement exists to enforce.

74.     To determine whether the language in the Letter constitutes a threat that violates the FDCPA, the least sophisticated consumer standard should be used. *Russell v. Equifax*, 74 F.3d 30, 34 (2d Cir. 1996).

75.     The letter clearly states that if steps are not taken by Plaintiff to pay the alleged debt, judgement enforcement proceedings might be initiated against him. *See* **Exhibit A**. The least sophisticated consumer, or even a moderately sophisticated consumer, would understand this to mean that Defendants have the power to, and likely will, initiate proceedings against him to enforce the alleged judgement previously obtained.

76.     The Second Circuit has held that when considering whether an improper legal threat has been made it must consider the facts and circumstances of each particular case as well as a number of factors. *Berger v. Suburban Credit Corp.,* 2006 WL 2570915 at *4 (E.D.N.Y. 2006). For example, one factor which should be considered by courts is "whether the language in the letters explicitly threatens that legal action will be taken or whether it simply describes available alternatives which involve possible legal action." *Id*. at *5.

77.     Here, the language included in Defendant's letter explicitly threatens that legal action will commence if Plaintiff does not act to pay the debt he allegedly owes. This threat is made regardless of the fact that Defendant does not have the ability to initiate enforcement proceedings based on a judgement that has never been obtained.

78.     The Second Circuit has also held that a violation of § 1692e(5) existed where a defendant presented evidence that they did not intend to take legal action after threatening to do the same. *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22 (2d Cir. 1989).

79.     In *Pipiles*, the plaintiff had received a debt collection letter stating that payment was necessary within 48 hours otherwise the collector would "take action necessary and appropriate

to secure payment in full." *Id*. at 24. The court held that this language constituted a threat to take legal action.

80.     Further, the *Pipiles* court reasoned that "the clear import of the language taken as a whole is that some type of legal action had already been or is about to be initiated and can be averted from running its course only by payment." *Id*. at 25. There, the defendant testified that they wouldn't normally pursue legal action for the small amount of debt that the plaintiff owed. This led the court to hold that § 1692e(5) had been violated.

81.     Here, the language is much more explicit in terms of its reference to Defendant's intention to initiate proceedings to enforce the nonexistent judgement against Plaintiff. Defendant made this threat to act with the knowledge that the action could not legally be carried out. Through this Letter, Defendant clearly sought to intimidate and harass Plaintiff into paying the debt that he allegedly owed. This is exactly the type of behavior by debt collectors that the FDCPA was enacted to prevent.

### Fourth Count
### Use of Unfair or Unconscionable Means in Attempt to Collect Debt
### 15 U.S.C. §1692f

82.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

83.     Under the FDCPA it is unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. While § 1692f lists several actions that can be considered unfair or unconscionable, it does so "without limiting the general application of the foregoing." § 1692f.

17

84.     The language "unfair and unconscionable" has been interpreted by the Seventh Circuit to be "as vague as they come," in terms of legislative phrases. *Beler v. Blatt, Hasemiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). This implies that § 1692f was meant to act as a catchall provision to prohibit any debt collection practices that a court may deem to be unfair or unconscionable.

85.     Although congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. *Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

86.     The Eleventh Circuit has also reasoned that "the plain meaning of the words sheds some light on their meaning. Relying on definitions of the Act's terms, courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'shows no regard for conscience,' or 'affronts the sense of justice decency, or reasonableness.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1199 (11th Cir. 2010).

87.     The Third Circuit has also elected to interpret the language of the FDCPA broadly. *Brown*, 464 F.3d at 453 (3d Cir. 2006). In *Brown*, the court states that "because the FDCPA is a remedial statute... we construe its language broadly, so as to effect its purpose." *Id*.

88.     Other means of interpretation have been taken, such as using the enumerated unfair or unconscionable acts and determining their commonalities. *Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015). In *Elyazidi*, the court determined that "what all of these enumerated activities have in common is the capacity to harass the debtor or to pressure her to pay the debt." *Id*. at 236.

89.     The actions taken by Defendant clearly fit into both the broad plain meaning definition of "unfair" that courts have relied on when interpreting claims under § 1692f and the harassment definition of the 4th Circuit. Defendant threated to initiate enforcement proceedings against

Plaintiff, stating that a judgement had been rendered against him when no such judgement existed. This was meant only to intimidate Plaintiff into paying the debt that he allegedly owes out of fear that legal action would be taken against him if he did not.

90.     The statement included on the back of Defendant's notifying Plaintiff that some of his money or property may have been taken in order to comply with the judgement was deceptive on its face. *See* **Exhibit A**. As stated, there was no way for Plaintiff's property to have been garnished to satisfy a judgement because no judgement against him had ever been obtained.

91.     Again, this notice which was included on the back of Defendant's letter was only meant to intimidate and harass Plaintiff as a means of making him pay the debt he allegedly owes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and The Tariq Law Firm, PLLC as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages;

(c) Awarding Plaintiff and the Class actual damages;

(d) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(e) Awarding pre-judgment interest and post-judgment interest; and

(f) Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  May 16, 2019

Respectfully submitted,

__s/Subhan Tariq_____
Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101
Telephone: (718) 674-1245
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:

    Forster & Garbus LLP
    60 Motor Pkwy
    Commack, NY 11725

    (via Prescribed service)

    LVNV Funding, LLC
    1703 Laurel Street
    Columbia, SC 29223

    (via Prescribed service)

    Clerk of the Court,
    United States District Court
    Southern District of New York
    500 Pearl Street
    New York, NY 10007

    (For Filing purposes)