## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARLOS FLORES,

                    Plaintiff,

    -against-

FORSTER & GARBUS LLP, LVNV FUNDING, LLC,
and PROVEST LLC,

                    Defendants.

_____/

**Docket No.:** 1:19-cv-04494-VSB

**THIRD
AMENDED COMPLAINT**
Request for Jury Trial

Plaintiff, Carlos Flores ("Plaintiff"), by and through his attorney, Subhan Tariq, Esq., as and for his

Complaint against Defendants, Forster & Garbus LLP, LVNV Funding, LLC, (hereinafter referred

to as "Defendants"), and Provest LLC, (hereinafter referred to as "Defendant Provest"), respectfully

sets forth, complains and alleges, upon information and belief, the following:

### INTRODUCTION/ PRELIMINARY STATEMENT

1.      Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §

1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute

to the number of personal bankruptcies, to material instability, to the loss of jobs, and to

invasions of individual privacy." *Id.* Congress concluded that "existing laws . . . [we]re

inadequate to protect consumers," and that "the effective collection of debts" does not require

"misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

2.      Congress explained that the purpose of the Act was not only to eliminate abusive debt

collection practices, but also to "insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged." § 1692(e). Congress then

determined that the existing consumer protection laws were inadequate. § 1692(b). The FDCPA

creates a private cause of action for consumers to seek damages against debt collectors who fail to comply with its requirements. § 1692k.

3.      The Second Circuit has held that when determining whether a collection letter violates the FDCPA, courts must adopt a standard based on the least sophisticated consumer. *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

4.      The purpose of using the least sophisticated consumer standard is to protect "all consumers, even those who are naïve and trusting." *Id*. at 1320. The standard also serves the purpose of protecting "debt collectors from idiosyncratic interpretations of debt collection letters." *Id*. Here, under the least sophisticated consumer standard, Defendants' actions qualifying as both unfair and deceptive, and in violation of the FDCPA.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 15 U.S.C. § 1692 *et seq*. If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

6.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

7.      Plaintiff Carlos Flores is a resident of State of New York and currently resides at 140 W 104th St., Apt. 14C, New York, NY 10025.

8.      Defendant Forster & Garbus LLP, is a law firm engaged in the business of collecting debts with a principal place of business located in Commack, New York.

9.      Defendant LVNV Funding, LLC, is a collection agency engaged in the business of collecting debts with a principal place of business located in Columbia, South Carolina.

10.     Defendant Provest LLC is a corporation engaged in the business of providing service of process with a principal place of business located in 320 Carleton Avenue, Suite 2600, Central Islip, NY 11722.

11.     Plaintiff is a "consumer" as defined by the FDCPA, 15 USC § 1692a(30).

12.     Defendants are both a "debt collector" as defined and used in the FDCPA under 15 USC § 1692a(6).

## FACTUAL ALLEGATIONS

13.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were fully set forth at length herein.

14.     Defendants collect and attempt to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone and internet.

15.     Upon information and belief, within the last year Defendant Forster & Garbus LLP commenced efforts to collect debt allegedly owed by Plaintiff to Defendant LVNV funding.

16.     Plaintiff received a letter dated April 18, 2019 from Forster & Garbus LLP (the "Letter"). *See* **Exhibit A**. Forster & Garbus identifies itself in its return address as "A New York law firm." *Id*. The Letter appears to be a standard form letter that could potentially have been sent to hundreds or thousands of consumers. *Id*.

17.     The front side of the Letter states: "A judgement has been duly entered in court against you." *Id*. This is the first line of the Letter. *Id*.

18.     The Letter further informs Plaintiff that "unless satisfactory arrangements are made with this office to pay the full judgement balance, judgment enforcement proceedings may be instituted… to secure payment thereof." *Id*.

19.     Plaintiff is instructed that "all payments must be made payable to Forster & Garbus, as attorneys, and sent to this office." *Id*.

20.     The Letter states that a balance of $1,138.75 is due to Defendant LVNV Funding LLC, with the original creditor listed as Credit One Bank, N.A. *Id*. A representative is listed as "Mr. Cohen," and his office hours are included. *Id*.

21.     Defendants have also included a statement on the front side of the letter reading: "We are debt collectors and any information we obtain will be used in attempting to collect this debt." *Id*.

22.     The back side of the Letter includes information regarding the judgement that was entered against Plaintiff. *Id*. Under the heading "Notice to Judgement Debtor or Obligor," it states: "Money or property belonging to you may have been taken or held in order to satisfy a judgement or order which has been entered against you." *Id.*

23.     The notice continues to state a number of exceptions to money or property that can be taken to satisfy judgements such as social security benefits, public assistance, alimony or child support, etc. *Id*. It instructs Plaintiff to "act promptly" if he believes that any property taken is exempt from being used to satisfy the judgement. *Id*. It states that he can consult an attorney to get any money back that may have been improperly taken pursuant to the judgment against him. *Id*.

24.     The back side of the letter again includes a statement that Defendants are debt collectors and any information obtained will be used in attempting to collect debt. *Id*.

25.     Notably, the Letter does not provide an index number, the court where the lawsuit was filed, date of filing, the date that the wrongfully obtained judgment was entered, or any other pertinent information related to the lawsuit or wrongfully obtained judgment.

26.     Defendants wrongfully obtained a judgment against Plaintiff via a fraudulent affidavit of service. As a result, Plaintiff is currently in the process of filing an order to show cause to vacate the judgment wrongfully obtained via a fraudulent affidavit of service.

27.     Upon request, Defendants' counsel, in the present action, Glenn M. Fjermedal, Esq., produced the fraudulent affidavit of service used, by Defendants to wrongfully obtain a judgment against Plaintiff, to the undersigned. *See* **Exhibit B**. According to the fraudulent affidavit of service, the process server firm employed by Defendants, for the purposes of serving Plaintiff, was Defendant Provest. *Id*.

28.     The fraudulent affidavit of service, provided by Defendants' counsel to Plaintiff's counsel, falsely claims that Defendant Provest's process server, William Cancroft, License No. 2032440, served someone named "Ana Flores, FAMILY MEMBER" on behalf of Plaintiff. *Id*. There is **no one** in Plaintiff's family with the name "Ana Flores." Plaintiff's mother and sister also reside at Plaintiff's address. Plaintiff's mother, who is not named Ana Flores, weighs over four-hundred (400) pounds and is unable to walk due to her weight. The allegedly served person named "Ana Flores" is described as weighing between "130-150 LBS." *Id*. Plaintiff's sister's first name is not Ana and her last name is not even Flores. Plaintiff's sister also does not match any of the descriptions in the fraudulent affidavit of service.

29.     Notably, Defendant Provest was one of the defendants sued in a 2018 class action lawsuit in federal court under allegations of sewer service. *See* **Exhibit C**. In *Reches, Benjamin v. Gross Polowy, LLC, Provest, LLC, and John Does 1-25*, Defendant Provest was accused of fabricating a

fraudulent affidavit of service wherein it also alleged service upon a female whose descriptions matched no one in the plaintiff's household – virtually similar to the fraudulent affidavit of service in the present action. *Id*.

30.     Furthermore, according to Defendant Provest's website, it has three process server firms across the United States. *See* **Exhibit D**. Besides its Central Islip, NY firm employed by Defendants in the present action, Defendant Provest also has a Tampa, FL firm. *Id*. Defendant Provest's Tampa, FL firm "was accused of improperly serving papers in foreclosure cases." *See* **Exhibit E**. As a result of Attorney General Pam Bondi's investigation, Defendant Provest's Tampa, FL firm was forced to "pay $462,500 to the Florida Bar Foundation for a legal aid program that helps low-income families facing foreclosure." *Id*. In effect, the process server firm, Defendant Provest, employed by Defendants, has a history of engaging in the practice of sewer service in at least more than one state.

31.     Defendants' actions have clearly violated the FDCPA in several ways. Firstly, Defendants wrongfully obtained a judgment against Plaintiff via a fraudulent affidavit of service.

32.     Defendants also failed to include a statement in their Letter to Plaintiff which informs him that, while the communications made to him were by a law firm, that law firm was acting solely in its capacity as a debt collector.

33.     The Letter received by Plaintiff does not include language informing him that no attorney was meaningfully involved in the review of the communication. Without such a disclaimer, the consumer is meant to understand that meaningful attorney review had taken place.

34.     All of the foregoing aspects of the Letter sent by Defendant Forster & Garbus on behalf of Defendant LVNV Funding constitute unfair and deceptive means of attempting to collect a debt.

35.     Plaintiff is entitled to relief pursuant to a number of FDCPA provisions.

## FIRST COUNT

### (As to Defendants Forster & Garbus and LVNV Funding)

### Use of False, Deceptive, and Misleading Representations
### 15 U.S.C. § 1692 et seq.

36.    Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

37.    Under the FDCPA it is unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.

38.    Defendants are in violation of 15 U.S.C. §1692e – preface by failing to provide Plaintiff with an index number, the court where the lawsuit was filed, date of filing, the date that the wrongfully obtained judgment was entered, or any other pertinent information related to the lawsuit or wrongfully obtained judgment on the Letter sent to Plaintiff.

39.    Under the FDCPA it is unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. This includes the false representation of "the character, amount, or legal status of any debt." § 1692e(2)(A).

40.    As a threshold matter when a court is evaluating a claim for misrepresentation of the legal status of a debt, it must first determine whether such action could not legally be taken or is not intended to be taken. *Gervais v. Riddle & Associates, P.C.* 479 F. Supp. 2d 270, 273(D. Conn. 2007). In order to make that determination, the court must evaluate the nature of the Plaintiff's alleged debt. *Id*.

41.    Here, Defendants produced a fraudulent affidavit of service falsely claiming that someone named "Ana Flores, FAMILY MEMBER" was served on behalf of Plaintiff. *See* **Exhibit B**. As aforementioned, there is no one is Plaintiff's family with the name "Ana Flores." Plaintiff's mother

7

and sister also reside at Plaintiff's address. Plaintiff's mother, who is not named Ana Flores, weighs over four-hundred (400) pounds and is unable to walk due to her weight. The allegedly served person named "Ana Flores" is described as weighing between "130-150 LBS." *Id*. Furthermore, Plaintiff's sister's first name is not Ana and her last name is not even Flores. Plaintiff's sister also does not match any of the descriptions in the fraudulent affidavit of service. Plaintiff was never properly served.

42.    Further, courts within the Second Circuit have found that violations of the FDCPA occur when defendants have engaged in the practice of sewer service. *See Polanco*, 930 F. Supp. 2d 547 (S.D.N.Y. 2015).

43.    In *Polanco*, the court denied defendant's motion for summary judgement finding that a question of fact existed regarding whether it had engaged in sewer service in order to obtain a default judgement against plaintiff. *Id*. at 552. The facts here are nearly identical, as Defendants likely carried out sewer service in order to wrongfully obtain a judgement against Plaintiff.

44.    Defendants attempted to collect on Plaintiff's alleged debt without adhering to basic requirements of due process. By doing so, Defendant misrepresented the legal status of the alleged debt.

45.    Under 15 U.S.C § 1692e it is unlawful to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition includes "the representation or implication that any individual is an attorney or that any communication is from an attorney." § 1692e(3).

46.    Because Defendant Forster & Garbus LLP acts as a law firm as well as a debt collector, it has a responsibility to consumers to clearly indicate that they it is acting solely as a debt collector, and not as a law firm, when sending dunning letters. *Gonzalez v. Kay*, 577 F.3d 600,

604 (5th Cir. 2009). Defendant failed to fulfill this responsibility. In *Gonzalez*, the court held that "a lawyer acting as a debt collector must notify the consumer through a clear and prominent disclaimer, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out [a] letter." *Id*.

47.     While the Letter sent to Plaintiff informs him that it is from a debt collector, it does not provide a clear disclaimer that Defendant was not acting as a law firm when sending it. Additionally, the return address of the Letter indicates that Defendant Forster & Garbus LLP is "a New York law firm," thus clearly a communication from an attorney's office. *See* **Exhibit A**.

48.     Defendants have also misrepresented the degree of attorney review that had taken place prior to Plaintiff receiving the Letter. The Letter itself does not include a disclaimer that no attorney had personally reviewed Plaintiff's individual case. This "safe-harbor" language is necessary if attorneys send out debt collection letters without investigating the merits of a particular case. *Greco*, 412 F.3d at 364 (2d Cir. 2005).

49.     While failing to include such necessary disclaimer language, the Letter does identify a representative as Mr. Cohen. *See* **Exhibit A**. It does not state that Mr. Cohen is an attorney or what actions had been taken by him prior to the Letter being mailed. *Id*.

50.      By including this statement referring to a representative in its Letter, Defendant appears to be claiming to have partaken in meaningful attorney review of Plaintiff's information. However, there is a genuine question of fact regarding whether any level of attorney review had been carried out whatsoever before the letter at issue was sent.

51.     Defendant has not made any claims or presented any evidence to suggest that it acted in its capacity as a law firm when reviewing Plaintiff's information.

52.     The letter sent by Defendant is very clearly a form letter that could plausibly have been sent to hundreds, if not thousands, of consumers. While the facts of this case are not identical to those in *Clomon*, where an attorney allowed his name and facsimile of his signature to appear on computer generated letters, the holding there is still relevant. *Clomon,* 988 F.2d 1314 (2d Cir. 1993). There, the Second Circuit held that the attorney had violated § 1692e(3) by allowing collection letters with his name to be sent while he "played virtually no day-to-day role in the debt collection process." *Id.* at 1320.

53.     Because of the minimal involvement the attorney took in collecting debt, the court held in *Clomon* that "the collection letters were not 'from' [him] in any meaningful sense of the word." *Id*. Similarly, here, the collection letter sent by Defendant is not 'from' them in their capacity as attorneys, but only as debt collectors.

54.     Again, Defendant had a responsibility to clearly differentiate between these two roles and neglected to do so. *Gonzalez*, 577 F.3d at 604 (5th Cir. 2009).

55.     The Second Circuit in *Clomon* went on to state that "no mass mailing technique is permissible- regardless of how effective it may be- if that technique constitutes a false, deceptive, or misleading communication." *Clomon*, 988 F.2d at 1321 (2d Cir. 1993).

56.     Here, Defendant sent a form letter Plaintiff for the purpose of collecting a debt, and very plausibly failed to conduct any attorney review whatsoever. This is especially true given the fact that, as the Second Circuit stated, "there will be few, if any, cases in which a mass-produced collection letter…will comply with the restrictions imposed by § 1692e. *Id*.

57.     Similarly, the Seventh Circuit has also held that "a rational jury might [find], based on the volume of mail sent by an attorney's firm, that it was unlikely that attorney had actually

reviewed consumers files before authorizing letters to be sent to them." *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001).

58.     Although the Second Circuit has declined to define "meaningful attorney involvement" as it applies to attorneys sending debt collection letters, the reasoning that was involved in the decision not to create a universally applicable definition is relevant here. *See Miller v. Wolpoff*, 321 F.3d 292 (2d Cir. 2003).

59.     In *Miller*, a standard for "meaningful attorney involvement" is not created because "there may be circumstances where, following discovery, it becomes clear that the attorney's familiarity with the client's contracts and practices would negate the need to review some if not all the documents [the plaintiff sought] to acquire." *Id*. at 304. Here, there is no indication that any such familiarity of Plaintiff's information had been established by Defendant before the Letter at issue was sent.

60.     In *Miller*, the attorney defendants submitted affidavits and other evidence showing that they had conducted some review into consumers' information before sending dunning letters. *Id*. at 301. *See also Nielson v. Dickerson*, 307 F.3d 623 (7th Cir. 2002). The Second Circuit held that although the defendants claimed that their affidavits made clear that they satisfied the FDCPA's requirement of reasonable attorney involvement, the court reasoned that they "lacked sufficient detail to permit the district court…to determine that their review was sufficient as a matter of law." *Miller*, 321 F.3d at 305 (7th Cir. 2003).

61.     Here, no such evidence has been provided by Defendant to suggest that any level of attorney review had taken place whatsoever before sending the dunning Letter to Plaintiff.

62.     Further, the Second Circuit in *Miller* held that granting a motion to dismiss would be premature before the plaintiff was able to conduct discovery regarding how much attorney

review took place. *Id.* at 307. The court stated that "if discovery…were to reveal that [the attorney defendants] handled [a] high volume of accounts, received only limited information described in the attorney affidavits, [and] reviewed the collection files with such speed… a reasonable jury could conclude that [the attorneys] lacked sufficient professional involvement with plaintiff's file" *Id.* at 306.

63.     Although a standard has not been set by the Second Circuit regarding how much attorney involvement is required to warrant sending a collection letter that complies with § 1692e, other courts have held that even minimal involvement is not sufficient.

64.     In *Nielson*, the Seventh Circuit held that even though a law firm was actively involved in investigating consumer information, they had still violated the FDCPA. *Nielson*, 307 F.3d at 636. There, the law firm ran computer checks of consumer information, and investigated whether the consumers had declared bankruptcy before sending a collection letter. *Id*. However, the court held that "beyond conducting facial checks of the data [the defendant] was provided, [he] relied on creditor's judgement concerning the validity and delinquency of the debt." *Id.* at 627. The court held that the defendant's "involvement still fell markedly short" of FDCPA requirements under § 1692e. *Id*. at 638.

65.     Similarly, based on the lack of evidence provided by Defendant and the fact that the Letter received by Plaintiff is a form letter, it appears as though Defendant has not engaged in any attorney review of Plaintiff's information whatsoever.

66.     The Letter did not even provide an index number, the court where the lawsuit was filed, date of filing, the date that the wrongfully obtained judgment was entered, or any other pertinent information related to the lawsuit or wrongfully obtained judgment.

67.     Although attorneys are able to send collection letters without conducting meaningful review of a consumer's information, they must clearly indicate that no such review has taken place. To reiterate, the Second Circuit has held that "an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process so long as that letter includes disclaimers" that he is not acting as an attorney at the time of sending the letter. *Greco*, 412 F.3d at 364 (2d Cir. 2005).

68.     Not only did Defendant fail to include such a disclaimer in its letter, but also failed to provide evidence that any attorney review had occurred.

69.     The wrongful actions taken by Defendants in the underlying case are exactly what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief as a result of Defendants' blatant violations.

## SECOND COUNT

### (As to Defendants Forster & Garbus and LVNV Funding)

### Use of Unfair or Unconscionable Means in Attempt to Collect A Debt
### 15 U.S.C. §1692f

70.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

71.     Under the FDCPA it is unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. While § 1692f lists several actions that can be considered unfair or unconscionable, it does so "without limiting the general application of the foregoing." § 1692f.

72.     The language "unfair and unconscionable" has been interpreted by the Seventh Circuit to be "as vague as they come," in terms of legislative phrases. *Beler v. Blatt, Hasemiller, Leibsker &*

*Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). This implies that § 1692f was meant to act as a catchall provision to prohibit any debt collection practices that a court may deem to be unfair or unconscionable.

73.     Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. *Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

74.     The Eleventh Circuit has also reasoned that "the plain meaning of the words sheds some light on their meaning. Relying on definitions of the Act's terms, courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'shows no regard for conscience,' or 'affronts the sense of justice decency, or reasonableness.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1199 (11th Cir. 2010).

75.     The Third Circuit has also elected to interpret the language of the FDCPA broadly. *Brown*, 464 F.3d at 453 (3d Cir. 2006). In *Brown*, the court states that "because the FDCPA is a remedial statute… we construe its language broadly, so as to effect its purpose." *Id.*

76.     Other means of interpretation have been taken, such as using the enumerated unfair or unconscionable acts and determining their commonalities. *Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015). In *Elyazidi*, the court determined that "what all of these enumerated activities have in common is the capacity to harass the debtor or to pressure her to pay the debt." *Id*. at 236.

77.     The actions taken by Defendants clearly fit into both the broad plain meaning definition of "unfair" that courts have relied on when interpreting claims under § 1692f and the harassment definition of the 4th Circuit. Defendants attempted to collect on a judgment wrongfully obtained against Plaintiff via a fraudulent affidavit of service. *See* **Exhibit B**.

78.     The fraudulent affidavit of service provided by Defendants' counsel to Plaintiff's counsel falsely claims that someone named "Ana Flores, FAMILY MEMBER" was served on behalf of Plaintiff. *See* **Exhibit B**. As aforementioned, there is no one is Plaintiff's family with the name "Ana Flores." Plaintiff's mother and sister also reside at Plaintiff's address. Plaintiff's mother, who is not named Ana Flores, weighs over four-hundred (400) pounds and is unable to walk due to her weight. The allegedly served person named "Ana Flores" is described as weighing between "130-150 LBS." *Id*. Furthermore, Plaintiff's sister's first name is not Ana and her last name is not even Flores. Plaintiff's sister also does not match any of the descriptions in the fraudulent affidavit of service. Plaintiff was never properly served.

79.     The actions taken here by Defendants in wrongfully obtaining a default judgement without properly serving process on Plaintiff go against fundamental notions of fairness and due process.

80.     The wrongful actions taken by Defendants in the underlying case are exactly what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief as a result of Defendants' blatant violations.

## THIRD COUNT

### (As to Defendant Provest)

### Fraud

81.     Plaintiff repeats, reiterates and incorporates the allegations contained in all preceding paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

82.     In the United States, common law generally identifies nine elements needed to establish fraud: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by

the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury. See, e.g., *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1210 n.3, 2012 U.S. App. LEXIS 1175, at *25 n.3 (9th Cir. 2012) (quoting *Staheli v. Kauffman*, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979)); *Rice v. McAlister*, 268 Ore. 125, 128, 519 P.2d 1263, 1265 (1975); *Heitman v. Brown Grp., Inc.*, 638 S.W.2d 316, 319, 1982 Mo. App. LEXIS 3159, at *4 (Mo. Ct. App. 1982); *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 41, 56 P.3d 524, 536-37 (Utah 2002).

83.     Each of these elements is satisfied in the instant case.

84.     In the instant case, Defendant Provest produced a fraudulent affidavit of service.

85.     As aforementioned, Defendant Provest's fraudulent affidavit of service falsely claims that Defendant Provest's process server, William Cancroft, License No. 2032440, served someone named "Ana Flores, FAMILY MEMBER" on behalf of Plaintiff. There is **no one** in Plaintiff's family with the name "Ana Flores." Plaintiff's mother and sister also reside at Plaintiff's address. Plaintiff's mother, who is not named Ana Flores, weighs over four-hundred (400) pounds and is unable to walk due to her weight. The allegedly served person named "Ana Flores" is described as weighing between "130-150 LBS." Plaintiff's sister's first name is not Ana and her last name is not even Flores. Plaintiff's sister also does not match any of the descriptions in the fraudulent affidavit of service. Accordingly, Defendant Provest's fraudulent affidavit of service contains false representations.

86.     Knowledge of a lawsuit filed against him would have materially affected Plaintiff's ability to move, answer, or otherwise respond to the lawsuit filed against him. Had it not been for Defendant Provest's fraudulent affidavit of service, Plaintiff would have had knowledge of a

lawsuit filed against him and would not have been subject to a default judgment being entered against him. Accordingly, Defendant Provest's false representations were unquestionably material to Plaintiff not having knowledge of a lawsuit filed against him and being subject to a default judgment being entered against him.

87.    As aforementioned, Defendant Provest knew that the representations made in its fraudulent affidavit of service were false.

88.    As a direct and proximate result of Defendant Provest's fraudulent affidavit of service, Plaintiff has been damaged in an amount to be determined at trial, and is entitled to recover such an amount, together with interest from the time of the fraudulent conduct.

89.    Upon information and belief, it is the practice of Defendant Provest to produce fraudulent affidavits of service.

90.    Such conduct, as described herein, is directed towards the general public.

91.    Defendant Provest's conduct, as described herein, is both wanton and willful, and involves high moral culpability.

92.    As a result, Plaintiff demands judgment against Defendant Provest for compensatory damages in an amount to be determined at trial and an award of punitive damages in such amount as the jury shall find is needed to punish Defendant Provest and deter it and other process server firms from engaging in similar acts, plus interest, costs, and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants and Defendant Provest as follows:

On the First and Second Counts:

    A.  For actual damages provided and pursuant to 15 U.S.C. § 1692(k)(a)(1);

B.  For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(A);

C.  For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(B);

D.  For attorneys' fees and costs provided and pursuant to 15 U.S.C. 1692k(a)(3);

E.  A declaration that Defendants' practices violated the FDCPA;

On the Third Count:

F.  An award of punitive damages in an amount to be determined by the trier of fact;

On all Counts:

G.  For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  February 5, 2020

Respectfully submitted,

Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101
Telephone: (718) 674-1245
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:

Forster & Garbus LLP
60 Motor Pkwy
Commack, NY 11725

(Via prescribed service)

LVNV Funding, LLC
1703 Laurel Street
Columbia, SC 29223

(Via prescribed service)

Provest LLC
320 Carleton Avenue, Suite 2600
Central Islip, NY 11722

(Via Prescribed service)

Clerk of the Court,
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

(For filing purposes)